UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RENA LOUISE JACOBY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 1:15-cv-02001-SEB-MJD |
| ) | |
| CAROLYN W. COLVIN, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Rena Louise Jacoby ("Jacoby") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3)(A). For the reasons set forth below, the Magistrate Judge recommends that the District Judge **AFFIRM** the decision of the Commissioner.

**I.   Background**

Jacoby filed her application for SSI on November 30, 2012, alleging an onset of disability on February 1, 1999. [Dkt. 14-2 at 12.] Jacoby alleges disability due to seizures, fibromyalgia, depression, anxiety, and right knee pain.[1] [Dkt. 14-2 at 14-17.] Jacoby's applications were initially denied on February 12, 2013, and denied again on June 3. 2013, upon reconsideration. [Dkt. 14-2 at 12.] Jacoby timely filed a written request for a hearing, which was held on July 29,

---

[1] Jacoby and the Commissioner recited the relevant factual and medical background in more detail in their opening briefs. [*See* Dkt. 17 and Dkt. 20.] Because these facts involve Jacoby's confidential and otherwise sensitive medical information, the Court will incorporate by reference the factual background in the parties' briefs but will articulate specific facts as needed below.

1

2014, before Administrative Law Judge Belinda J. Brown ("ALJ"). [*Id.*] The ALJ issued a decision on August 29, 2014, again denying Jacoby's application for SSI. [Dkt. 14-2 at 9.] On November 10, 2015, the Appeals Council denied Jacoby's request for review, making the ALJ's decision the final decision for purposes of judicial review. [Dkt. 14-2 at 2.] Jacoby timely filed her Complaint with this Court on December 18, 2015, which Complaint is now before the Court.

## II.  Legal Standard

To be eligible for DIB or SSI, a claimant must have a disability pursuant to 42 U.S.C. § 423.[2] Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a five-step sequential analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three and she is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three and cannot perform her past relevant work but she can perform certain other available

---

[2] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI.  However, separate, parallel statutes and regulations exist for Disability Insurance Benefits and Supplemental Security Income claims.  Therefore, citations in this opinion should be considered to refer to the appropriate parallel provisions as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

work, she is not disabled. 20 C.F.R. § 404.1520. Before proceeding from step three to step four, the ALJ must assess the claimant's residual functional capacity (RFC), identifying the claimant's functional limitations and assessing the claimant's remaining capacity for work-related activities. S.S.R. 96-8p.

The ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* This Court may not reweigh the evidence or substitute its judgment for that of the ALJ but may only determine whether substantial evidence supports the ALJ's conclusion. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008) (citing *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (citing *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985); *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984)). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). To be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into his reasoning" and "build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

### III. The ALJ's Decision

The ALJ first determined that Jacoby has not engaged in substantial gainful activity since November 30, 2012, the application date. [Dkt. 14-2 at 14.] At step two, the ALJ determined that Jacoby "has the following severe impairments: osteoarthritis of the right knee." [*Id.*]

However, at step three, the ALJ found that Jacoby does not have an impairment or combination of impairments that meets or medically equals a listed impairment. [Dkt. 14-2 at 17.] In making this determination, the ALJ considered Listing 1.02A for Jacoby's knee impairment, but found that the medical evidence did not support all criteria of that listing. [*Id*.]

The ALJ next analyzed Plaintiff's residual functional capacity ("RFC"). She concluded that Plaintiff had the RFC to perform the following range of work:

> [S]it for six hours, stand for six hours and walk for six hours in an eight hour day; no foot controls on the right; occasional climbing ramps and stairs; never climb ladders, ropes or scaffolds; no crouching or crawling; no limitations on stooping; no unprotected heights, moving mechanical parts or balancing.

[R. at 15-16] In finding these limitations, the ALJ considered Jacoby's "symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." [Dkt. 14-2 at 17.] The ALJ then acknowledged that the evidence presented could reasonably show that Jacoby suffers from the symptoms she alleges, but he found her statements "not entirely credible." [Dkt. 14-2 at 18.] At step four, the ALJ concluded the Plaintiff has no past relevant work. [Dkt. 14-2 at 20.] The ALJ thus proceeded to step five, at which time she received testimony from the vocational expert indicating that someone with Plaintiff's education, work experience, age, and RFC would be able to perform jobs such as cashier, production assembler, and stock clerk order filler. Because these jobs existed in significant numbers in the national economy, the ALJ concluded that Plaintiff was not disabled. [Dkt. 14-2 at 21.]

## IV.  Discussion

Although Jacoby asserted multiple physical and mental impairments as the bases of her disability claim, the ALJ found only the osteoarthritis in her right knee qualified as a "severe" impairment at step two. The ALJ then proceeded with the sequential analysis, ultimately

4

concluding Jacoby is not disabled. Jacoby now contends the ALJ committed reversible error because she failed to include fibromyalgia, depression and anxiety among her "severe" impairments at step two.

The claimant bears the burden of establishing a severe impairment. *Young v. Sec'y of Health & Human Servs.,* 957 F.2d 386, 389 (7th Cir. 1992). An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). In deciding whether an impairment is severe, the ALJ considers "whether the claimant received a 'definite diagnosis,' whether treatment was recommended, and whether medication remedied or controlled the impairment." *Colson v. Colvin*, 120 F. Supp. 3d 778, 788 (N.D. Ill. 2015) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). Deciding whether impairments are severe at step two is a threshold issue only; an error at step two is only harmful if the ALJ stops his analysis at that step and does not consider the claimant's impairments at future steps. *See, e.g., Castile v. Astrue,* 617 F.3d 923, 927 (7th Cir. 2010) (noting that step two determination was "of no consequence with respect to the outcome of the case" because the ALJ "recognized numerous other severe impairments" and proceeded to later steps). Thus, as long as the ALJ finds at least one severe impairment, continues his analysis, and considers a Plaintiff's non-severe impairments at the later steps of his determination, a court need not remand a case to correct a step two error. *See id.; see also Curvin v. Colvin,* 2015 WL 542847, at *3 (7th Cir. Feb.11, 2015).

Each of Jacoby's arguments in favor of remand assert the ALJ erred at step two by failing to include additional impairments as severe. However, regardless of what evidence in the record may support her claims of additional severe impairments, the fact that some of Jacoby's impairments were not deemed to be severe at step two is of no legal consequence because the

5

ALJ proceeded with the sequential analysis. *See Christian R. Cotie v. Colvin*, 2016 WL 5415045, at *10 (N.D. Ill. Sept. 28, 2016); s*ee also Raines v. Astrue*, 2007 WL 1455890, at *7 (S.D. Ind. April 23, 2007) ("As long as the ALJ proceeds beyond step two, as in this case, no error could result solely from his failure to label an impairment as 'severe.' ").

Instead, the Court must focus on whether the ALJ properly considered the cumulative effect of all of Jacoby's impairments, whether severe or not, in subsequent steps of the analysis. *See Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003). The ALJ in this case complied with these requirements. In constructing Jacoby's RFC, she discussed the objective medical evidence relating to her other impairments. For example, the ALJ noted that Jacoby's convulsive seizures were controlled by medication, but she was still having breakthrough partial seizures that could be due to lack of compliance with taking the medication. [Dkt. 14-2 at 18.] The ALJ also incorporated into the RFC Dr. Winikates' limitation that Jacoby not operate machinery, climb ladders or work at heights due to her seizures.

The ALJ likewise discussed Jacoby's fibromyalgia diagnosis, noting that her treating physician, Dr. German, declined to evaluate Jacoby's functional capacity. In fact, there is no evidence in the medical record that any health care provider issued specific restrictions on Jacoby's functional capacity. Elsewhere in the opinion, the ALJ pointed out that the mental status examiner questioned whether Jacoby was putting forth her best effort during testing and both state agency psychological consultants determined her mental impairments were not severe. Ultimately, the ALJ concluded that Jacoby's testimony was not credible, a determination that Jacoby does not dispute.

Jacoby has the burden of proof to show that her impairments are severe and that they limit her ability to work. She has not done so here. Jacoby's challenges to the ALJ's step two

findings are misguided as even if the ALJ did err in determining some of her impairments were not severe, that error was harmless because the ALJ continued to consider Jacoby's non-severe impairments at future steps. *See Beatty v. Colvin*, No. 1:14-CV-01139-JMS-MJD, 2015 WL 1143210, at *11 (S.D. Ind. Mar. 12, 2015), report and recommendation adopted, No. 1:14-CV-01139-JMS-MJD, 2015 WL 1516378 (S.D. Ind. Mar. 31, 2015).

## V. Conclusion

For the foregoing reasons, the Court finds that substantial evidence supports the ALJ's decision that Rena Louise Jacoby is not entitled to Supplemental Security Income. The Magistrate Judge therefore recommends that the Commissioner's decision be **AFFIRMED**. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Dated: 11 OCT 2016

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Timothy E. Staggs
ARNHOLT & STAGGS LAW OFFICE
tim@arnholtandstaggs.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov